UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARMEN P.,

        Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

20-CV-0411-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 20)

Plaintiff Carmen P.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 14) is denied and defendant's motion (Dkt. No. 18) is granted.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

On July 5, 2016, plaintiff filed an application for SSI alleging disability based on heart murmur, fibromyalgia, rheumatoid arthritis, hypoglycemia, vitamin D deficiency, migraines, hematuria, joint pain, chest pain, anxiety, post-traumatic stress disorder ("PTSD"), dysthymic disorder, and depression. (Tr. 402-410, 432)[3] Her application was denied at the initial level and again after a *de novo* hearing before an Administrative Law Judge ("ALJ"). (Tr. 15-31, 305) On February 5, 2020, the Appeals Council denied plaintiff's request for review, and the ALJ decision's became the final decision of the Commissioner. (Tr. 1-6) This action followed. (Dkt. No. 1)

## DISCUSSION

I.  *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[2] The Court presumes the parties' familiarity with the case.

[3] References to "Tr." are to the administrative record in this case. (Dkt. No. 12)

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second,

whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to

the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the application date of July 5, 2016. (Tr. 18) At step two, the ALJ found that plaintiff had the severe impairments of mild thoracolumbar scoliosis, Hashimoto's thyroiditis, PTSD with panic attacks, and major depressive disorder; and the non-medically determinable impairment of fibromyalgia. (Tr. 19) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the Listings. (Tr. 21) Before proceeding to step four, the ALJ found that plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except she could occasionally perform postural activities; frequently reach overhead; frequently perform handling and fingering; she could perform simple, routine tasks; and could tolerate occasional contact with supervisors and coworkers, but no contact with the general public. (Tr. 23) The ALJ then found at step four that plaintiff had no past relevant work. (Tr. 29) At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, jobs existed in the national economy which plaintiff could perform, including the representative jobs of routing clerk, office helper, and package sorter. (Tr. 29-30) Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act. (Tr. 30-31)

IV. *Plaintiff's Challenges*

Plaintiff seeks remand of the Commissioner's decision on the grounds that: (1) the ALJ failed to properly evaluate plaintiff's symptoms and failed to further develop the record related to fibromyalgia and whether she met the requirements of Social Security Ruling ("SSR") 12-2p; (2) the Appeals Council improperly rejected evidence for cursory reasons; (3) the ALJ failed to further develop the record to close gaps; and (4) the ALJ did not account for limiting effects in RFC findings. (Dkt. No. 14-1 at 18-27) For the following reasons, the Court disagrees that remand is required.

### A. Step Two Evaluation

Plaintiff first argues that the ALJ inappropriately evaluated her allegations of fibromyalgia in concluding that she did not meet the requirements of SSR 12-2p, 2012 WL 3104869 (July 25, 2012) (Dkt. No. 14-1 at 17-22)

Social Security Ruling 12-2p provides guidance on how fibromyalgia can be established as a medically determinable impairment. First, the ruling requires a diagnosis of fibromyalgia made by a licensed physician, and the physician must have reviewed the person's medical history and conducted a physical examination. *See* SSR 12-2p, 2012 WL 3104869, at *2. Next, a claimant must establish either: (1) a history of widespread pain, at least 11 positive tender points, and evidence that other disorders that could cause symptoms and signs were excluded; or (2) a history of widespread pain, repeated manifestation of six of more fibromyalgia signs or conditions, and evidence that other disorders that could cause repeated manifestations of signs were excluded. *Id.* at *3

In concluding that plaintiff failed to establish the requirements of SSR 12-2p, the ALJ acknowledged that Baljinder Singh, M.D., assessed fibromyalgia in August of 2016.

7

(Tr. 19, 588) The ALJ explained that Dr. Singh apparently based this diagnosis on plaintiff's own report that she was previously diagnosed with fibromyalgia by a rheumatologist. Dr. Singh's report indicated no trigger point examination or findings along with his assessment. (Tr. 19, 586-89) Instead, examination showed normal motor strength, sensation, gait, station, and speech. (Tr. 587)

The ALJ also considered subsequent treatment notes from Mount St. Mary's Neurology, which referred to a fibromyalgia diagnosis, but there was no documentation of trigger point evaluations or findings, with examinations generally showing full strength and normal sensation, reflexes, gait, station, and speech. (Tr. 19, 1105-1119)

Moreover, during a September, 2016, consultative examination with David Brauer, M.D., plaintiff denied having specific trigger points, and Dr. Brauer observed that "[t]here were no trigger points evident on examination." (Tr. 19, 590, 593) During the examination, plaintiff only reported a previous fibromyalgia diagnosis and "pain all over." (Tr. 19, 590)

The ALJ concluded that although the record contained numerous references to fibromyalgia, it did not show the requisite history of widespread pain, 11 positive tender points, repeated manifestations of 6 or more fibromyalgia signs, symptoms, or co-occurring conditions, or evidence that other disorders that could cause the signs/symptoms were excluded. Accordingly, under SSR 12-2p, plaintiff's fibromyalgia was not a medically determinable impairment. (Tr. 19)

In support of her argument that the ALJ improperly evaluated her fibromyalgia at step two, she alleges widespread pain and five "co-occurring conditions like depression, gastro issues, migraines, anxiety, asthma, and other symptoms," citing to the entire

record in support of this statement. (Dkt. No. 14-1 at 19, citing Tr. 1-1275) Yet SSR 12-2p requires "evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." SSR 12-2p, 2012 WL 3104869, at *2-3. Plaintiff fails to establish that this requirement was met, and the record does not show that other disorders were excluded. To the contrary, in July, 2017, plaintiff reported to Nurse Practitioner ("NP") Vivian Gerard that "[h]er endocrinologist told her she did not have fibromyalgia and that she believes that all of her symptoms were more related to the Hashimoto's." (Tr. 1163)

The evidence summarized above constitutes substantial evidence supporting the ALJ's conclusion that plaintiff failed to satisfy the requirements of SSR 12-2p because the record does not contain evidence of 11 positive tender points, or that other conditions were excluded. *See Craig V. v. Saul*, No. 19-CV-1436, 2021 WL 878517, at *4 (W.D.N.Y. Mar. 9, 2021) (Although the medical records included references to plaintiff reporting or exhibiting pain, tenderness, weakness, numbness, and tingling, the record "fail[ed] to establish the requisite 11 of 18 tender points, as well as that other disorders that could cause such symptoms were excluded.")

The Court also rejects plaintiff's assertion that the ALJ failed to properly consider her symptoms and the record, "as it supports limiting effects from fibromyalgia and associated conditions that were not accounted for in the RFC finding." (Dkt. No. 19 at 3) Although the ALJ found that plaintiff's fibromyalgia was not a medically determinable impairment, the ALJ still explicitly considered her reported symptoms of hand pain and numbness, back pain radiating to her extremities, anxiety, panic attacks, and depression. (Tr. 23) The ALJ also expressly discussed plaintiff's allegations that her symptoms

affected her ability to perform certain activities, including, but not limited to, using her hands, reaching, lifting, standing, walking, performing postural activities, focusing, and following instructions. (Tr. 23, 48, 455, 459, 461) Finally, the ALJ stated that, in evaluating her subjective complaints and formulating the RFC, he "considered all symptoms."[4] (Tr. 23)

Specifically, the ALJ limited plaintiff to light work with occasional postural activities; frequent reaching overhead; frequent handling and fingering; simple, routine tasks; occasional contact with supervisors and coworkers; and no contact with the general public. (Tr. 23) The ALJ also credited some of plaintiff's subjective complaints related to use of her hands, stating that he gave "some weight to [her] subjective complaints and . . . limited her to frequent handling and fingering." (Tr. 28, 459) The ALJ connected the RFC limitation for a reduced range of light work to plaintiff's fatigue complaints. (23, 25) Plaintiff fails to show that additional limitations were supported by the record and excluded from the RFC.

Plaintiff also contends that the ALJ should have further developed the record because "there is a reference to rheumatologist evaluation and diagnosis of fibromyalgia, but this is missing from the record." (Dkt. No. 14-1 at 20) Plaintiff, through counsel, submitted multiple letters both before and after the hearing informing the ALJ of outstanding records, but she did not identify any outstanding rheumatology records. (Tr. 15-16, 499-506) She also submitted additional evidence that was entered into the record, and the ALJ held the record open after the hearing to allow her to obtain and submit evidence. (Tr. 42-44, 1104-1275) During the hearing, plaintiff requested permission to

---

[4] Notably, Plaintiff reported that her fibromyalgia symptoms improved with medication on multiple occasions. (Tr. 511, 590, 604, 1156, 1171-72)

submit additional emergency room and neurology records that she had not previously identified, but did not mention rheumatology records at that time. (Tr. 44-45)

It is well-settled that the burden to provide evidence to establish the RFC lies with the claimant. See 20 C.F.R. § 416.912(a); see also, e.g., Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."). The record here contained sufficient evidence for the ALJ to evaluate plaintiff's fibromyalgia, and no further development was required. See Janes v. Berryhill, 710 Fed. Appx. 33, 34 (2d Cir. 2018) ("The ALJ is not required to develop the record any further when the evidence already presented is 'adequate for [the ALJ] to make a determination as to disability.'") (quotation omitted).

For the reasons above, the record was sufficient for the ALJ to assess her fibromyalgia and other symptoms, and no further development was required. See Morris v. Berryhill, 721 Fed. Appx. 25, 27 (2d Cir. 2018) (the "theoretical possibility" that one missing treatment notation may exist that could have included evidence "does not establish that [the Commissioner] failed to develop a complete record"); see also Craig V., 2021 WL 878517, at *4 (rejecting plaintiff's contention that the ALJ was required to contact plaintiff's treating sources to obtain more information regarding whether his symptoms met SSR 12-2p's criteria for fibromyalgia).

### B. Development of the Record

Plaintiff also contends that the ALJ, and subsequently the Appeals Council, improperly excluded certain evidence plaintiff sought to submit outside of the five-day rule. (Dkt. No. 14-1 at 22-28)

Under SSA's regulations at 20 C.F.R. § 416.1435(a), an individual or his counsel must inform SSA about or submit written evidence at least five business days prior to a scheduled hearing with certain exceptions set forth in 20 C.F.R. § 416.1435(b). Those exceptions are: (1) the action "misled" the claimant; (2) a "physical, mental, educational, or linguistic limitation" prevented the claimant from disclosing or submitting evidence; or (3) some other "unusual, unexpected or unavoidable circumstance" beyond the claimant's control prevented disclosure or submission of the evidence. 20 C.F.R. 416.1435(b).

At the August, 2018, administrative hearing, the ALJ explained that he received a timely five-day letter and prehearing memorandum from plaintiff, and that documents that were submitted on the day of the hearing were identified in the letter and memorandum. (Tr. 41) The ALJ stated that he would exhibit and consider the newly-submitted records (Tr. 42) The ALJ noted that there were other sources listed in the letter, and he asked plaintiff's counsel whether the record was complete, or whether they were still waiting on other records. (Tr. 42) Plaintiff's counsel responded that they were still waiting on records from "NP Fincher" from Mount St. Mary's Hospital Clinic, and that those records were "invaluable for . . . her combined effects." (Tr. 42) The ALJ agreed to leave the record open for two weeks to allow plaintiff to obtain those additional records. (Tr. 43)

Plaintiff's counsel then told the ALJ that plaintiff had "just let [her] know" that plaintiff went to the emergency room two weeks prior for a panic attack and that she started seeing a new neurologist "within the last couple of weeks." (Tr. 44) Plaintiff's counsel asked the ALJ whether, if the record was going to be held open for two weeks, she could obtain and submit those records as well. (Tr. 44 ["if the record [is] going to be held open for two weeks, it may behoove us to get those records as well."]) Upon questioning from

12

the ALJ, plaintiff testified that she told her attorney about the treatment the week prior. (Tr. 45) The ALJ left the record open only for the records that were identified in plaintiff's five-day letter and prehearing memorandum. (Tr. 45, 60)

Following the hearing, plaintiff's representative submitted a letter on August 31, 2018, to alert the ALJ of delays in receiving the records from Mount St. Mary's. (Tr. 16, 504) The ALJ agreed to hold the record open for an additional two weeks, and the records were received and exhibited by the ALJ. (Tr. 16) Plaintiff's representative submitted an additional request on September 14, 2018, for records relating to a source named Venture Forthe. (Tr. 16, 506)

On September 4, 2018, plaintiff's representative submitted over 200 pages of medical evidence from Niagara Falls Memorial Medical Center ("NFMMC") from November, 2016, through August, 2018. (Tr. 16, 67-304) The ALJ declined to admit those records because he was not apprised of that source until the date of the hearing, that none of the exceptions provided by 20 C.F.R. § 416.1435(b) applied, and that the records should have been previously identified in plaintiff's August 31, and September 14, 2018, correspondence. (Tr. 16) The ALJ noted that plaintiff's submission was not accompanied by any explanation as to why the source was not identified in the five-day letter and pre-hearing memorandum. (Tr. 16)

Although plaintiff now challenges the ALJ's decision declining to allow her to submit additional records, she fails to address 20 C.F.R. § 416.1435 or establish that she met any of its exceptions. (Dkt. No. 14-1 at 22) Plaintiff failed to timely inform the ALJ of this evidence, despite it dating back to 2016 and despite her multiple requests to submit additional evidence. Nor does she show that she met an exception to the five-day rule.

13

Under these circumstances, the ALJ did not abuse his discretion in declining to admit this belated evidence. See 20 C.F.R. § 416.1435; see, e.g., Bauza v. Comm'r of Soc. Sec., No. 18-CV-1434, 2020 WL 4462512, at *6 (W.D.N.Y. Aug. 4, 2020) ("Due to the lack of a sufficient excuse for failing to timely submit the missing records, the A.L.J. was within his discretion to refuse to consider the late evidence.").

Plaintiff's tandem argument that the Appeals Council improperly rejected this evidence must also fail. The regulations provide that the Appeals Council may review a case if, among other things, it: (1) "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision," (2) "there is a reasonable probability that the additional evidence would change the outcome of the decision," and (3) the claimant shows "good cause" for not informing the Appeals Council about the new evidence or submitting it earlier. 20 C.F.R. § 416.1470(a)(5), (b).

The Appeals Council found that the evidence at issue was not new because was previously evaluated by the ALJ under 20 C.F.R. § 416.143. (Tr. 2)

The Court's review of the belatedly-submitted evidence shows that 146 pages of records from NFMMC were already submitted to the ALJ and exhibited as 11F. (Tr. 68-279) The ALJ cited to this exhibit throughout the administrative decision. (Tr. 20, 24-27) Further, plaintiff does not establish that there is a reasonable probability that the "new" evidence would have changed the ALJ's decision. In particular, plaintiff cites to a single treatment note indicating that she went to the NFMMC emergency room on August 10, 2018, for panic attacks and heart issues. (Dkt. No. 14-1 at 23 (citing Tr. 297)) At that time, plaintiff reported heart palpitations and was worried she was having a heart attack. (Tr. 300) A review of symptoms indicated anxiety and shortness of breath with no

palpitations or chest pain and the examination was otherwise normal. (Tr. 300-01) The attending physician's assessment noted "exam improved, pt sleeping, refused fluids, 80 [heart rate], symptoms resolved[,] wants to go." (Tr. 303)

Plaintiff contends that her August 10, 2018, self-report of having panic attacks "sometimes three times per week" supports her allegations that she "suffered from panic attacks and anxiety that caused limiting effects that may interfere with work functioning." (Dkt. No. 14-1 at 23) Yet the record already contained evidence of plaintiff's reports that she experienced panic attacks multiple times per day from November, 2017, until April, 2018 (Tr. 769) And the ALJ expressly found PTSD with panic attacks was a severe impairment and discussed her panic attacks throughout the decision. (Tr. 19, 23, 24, 25, 26) The ALJ also considered plaintiff's testimony that she used to experience three panic attacks per week, but that she had only two to three episodes per month with medication (Tr. 23, 52) Moreover, plaintiff also denied panic attacks in February, 2018, and said that she had not had one "for quite a while." (Tr. 1144) The ALJ accounted for all of plaintiff's limitations in the RFC that were supported in the record related to her mental impairments and moderate limitations. (Tr. 19-29 [limiting plaintiff to simple, routine tasks; occasional contact with supervisors and coworkers, and no contact with the general public.]). Thus, even if the Appeals Council erred in failing to consider the August, 2018, treatment note from NFMMC, a different conclusion would not have been reached with respect to plaintiff's disability determination. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (remand not required if the improperly "excluded evidence [was] essentially duplicative of evidence considered by the ALJ.").

The Court has considered plaintiff's remaining arguments and concludes they are without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 18) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:  June 24, 2021
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge